UNITED STATES DISTRICT COURT DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| Kasandra Jene Survia Brown, individually, and as natural mother and guardian for KMSB, a minor child | : : : : |
| Plaintiffs, | : Case No: : : |
| vs. | : : :TRIAL BY JURY DEMANDED : |
| CHI St. Alexius Williston Hospital and Ines A. Teuma Nguimfack, MD | : : : : : : : |
| Defendants. | : |

## COMPLAINT

Plaintiffs, Kasandra Jene Survia Brown ("Kasandra"), individually and as natural mother and guardian of KMSB, a minor child ("KMSB"), by and through the undersigned counsel, brings this medical negligence action against Defendants, CHI St. Alexius Williston Hospital ("CHI") and Ines A. Teuma Nguimfack, MD ("Dr. Teuma") (collectively "Defendants"), and states as follows:

## INTRODUCTION

1. This is a case of extreme medical malpractice in connection with the August 21, 2025 labor and delivery of KMSB at the CHI hospital.

2. The CHI team, including Dr. Teuma, RN Land, RN Hawthorne and RN Thomas and other healthcare providers ("CHI Team") failed to properly manage KMSB's induction of labor so as to accomplish a prompt and safe delivery.

3. Over a period of hours, as KMSB progressively deteriorated from having fetal

distress (with alarms repeatedly sounding for fetal bradycardia, severe fetal bradycardia and loss of signal) to experiencing a sentinel event, the CHI Team failed to timely appreciate the fetal distress, failed to timely appreciate the sentinel event and failed to timely expedite the delivery.

4.  Due to multiple breaches of Safety Culture principles and the corresponding standard of care, culminating in a complete system failure, by the time KMSB was finally delivered at 7:29 a.m. on August 21, 2025, he had sustained a severe brain injury in the nature of severe Hypoxic Ischemic Encephalopathy (HIE). KMSB will require extensive medical care and assistance for the rest of his life. KMSB will never be able to live independently or be gainfully employed.

## PARTIES

5.  Plaintiff, Kasandra Jene Survia Brown ("Kasandra"), is the mother and natural guardian of KMSB ("KMSB"), a minor, who was born on August 21, 2025. Kasandra and KMSB reside at 118 Jester Circle, Longview, Texas 75604 and are citizens of Texas.

6.  Defendant CHI St. Alexius Health Williston Medical Center ("CHI") is a regional medical facility located at 1301 15th Avenue NW, Williston, ND 58801-382. CHI claims to provide "comprehensive hospital and clinical services" and is part of CHI St. Alexius network, a regional healthcare system. CHI is a citizen of North Dakota.

7.  CHI claims, as part of its "Commitment to Safety" that, "Your safety is our highest priority. We're constantly striving to improve." CHI further claims Patient Rights include "high-quality care" and "clean and safe environment." CHI St. Alexius Health also claims it "is dedicated to helping mothers prepare for and experience the delivery of their new baby," with "trained teams of providers" to "assist women though labor and delivery when their baby is ready to arrive." "The staff is experienced and committed to the health and comfort of both mothers and babies in their

care."

8. Defendant CHI, at all times relevant and material hereto, acted and/or engaged in the ownership, control, direction, supervision, and provision of medical services directly and through its agents, ostensible agents, employees, servants, physicians, and nursing managers, charge nurses, nursing staff, including Dr. Teuma, Braphia Land, RN ("RN Land"), Alexis Hawthorne, RN ("RN Hawthorne") and Kaitlin Thomas, RN ("RN Thomas") who were all part of the CHI Team.

9. Defendant Dr. Teuma is an adult individual who board-certified in the field of Family Medicine. Dr. Teuma engages in the practice of Family Medicine and also practices Obstetrics and Gynecology. At all times relevant and material hereto, Dr. Teuma NPI # 1154776268 was licensed by the North Dakota Board of Medicine under ND License 16509 and the New York Board of Medicine under NY License 300099. Dr. Teuma resides 609 Wyatt Street, Williston, ND 58801 and is a citizen of North Dakota.

10. At all times relevant and material hereto, Defendant Dr. Teuma, RN Land, RN Hawthorne, and RN Thomas were employees, actual agents, and/or apparent/ostensible agents of CHI, acting within the scope of their employment, agency, and/or authority.

## JURISDICTION AND VENUE

11. This is an action for damages in excess of the Federal District Court's minimal jurisdictional limits of $75,000.00 as set forth in *28 USC §1332(a)*.

12. This action is properly filed in Federal District Court due to complete diversity of citizenship between Plaintiffs, and Defendants, as required by *28 USC §1332(a)(1)*.

13. Venue is proper in this District under *28 USC §1391(a)* because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District.

## FACTS

14. On the morning of August 20, 2025, CHI admitted 39.1 week pregnant Kasandra (and her baby boy KMSB), to its Hospital for induction of labor to be managed by the CHI Team.

15. At 9:13 a.m. a fetal heart monitor[1] (FHM) was placed to monitor fetal well-being and oxygenation.

16. A Sterile Vaginal Exam (SVE) was documented at 10:20 a.m. with cervical dilation of 2 cm and 50 percent effacement.

17. Subsequent SVE's were documented as being performed at 11:41 a.m. and 4:28 p.m. with Cytotec 25 mg placed each time.

18. Dr. Teuma was called at 5:00 p.m. and given report on the "strips", patient status, cervical exam and a complaint of heartburn.

19. At 5:35 p.m., Dr. Teuma was at bedside reviewing the "strip" and talking with the patient.

20. According to the Electronic Medical Record (EMR), Dr. Teuma entered an Admission History and Physical note at 8:47 p.m. on August 20, 2025, wherein she noted Kasandra was a "34 yo G4P3003 at 39w1d GA presented to L&D with contractions for the past 2 hrs." The note displays a signed time of 10:23 p.m. on August 21, 2025.

21. Also, according to the EMR, Dr. Teuma entered a labor progress note at 10:12 p.m. on August 20, 2025, which further displays a late entry indicating in part "IOL was started several hours ago. Patient had received 2 doses of Cytotec when provider rounded. Cat 1 tracing."

22. An SVE was performed by RN Land at 12:00 a.m. on August 21, 2025, which was documented to reveal 4-5 cm dilation, 50 percent effacement and -2 station.

---

[1] The CHI Team refers to the FHM as the "strip" or "strips in the Electronic Medical Record (EMR).

23. An additional SVE was performed by RN Land at 3:00 a.m. on August 21, 2025, which was document to reveal 5 cm dilation, 60 percent effacement and -2 station.

24. Between 4:00 a.m. and 4:44 a.m. on August 21, 2025, a total of 6 FHM alarms were triggered, 2 for bradycardia, 2 for severe bradycardia and 2 for loss of signal. None of these alarms were acknowledged.

25. According to the EMR, at 4:45 a.m., RN Land called Dr. Teuma, who was off site, and updated her on the latest SVE. No orders were requested or given and Dr. Teuma was not requested, nor did she go to the CHI Hospital at that time.

26. Between 4:49 a.m. and 5:13 a.m. on August 21, 2025, a total of 11 FHM alarms were triggered, 7 for bradycardia, and 4 for severe bradycardia. None of these alarms were acknowledged.

27. According to the EMR, at 5:15 a.m., RN Land called Dr. Teuma, who was still off site, and updated her on the latest SVE. RN Land documented MD states "call me when she is +3 station, I leave [sic] 10 minutes away." No orders were requested or given and Dr. Teuma was not requested, nor did she go to the CHI Hospital at that time.

28. Between 5:20 a.m. and 5:27 a.m. on August 21, 2025, a total of 3 FHM alarms were triggered, 1 for bradycardia, and 2 for loss of signal. None of these alarms were acknowledged.

29. According to the EMR, at 5:30 a.m. on August 21, 2025, RN Hawthorne documented the presence of late decelerations.

30. Between 5:39 a.m. and 5:48 a.m. on August 21, 2025, a total of 5 FHM alarms were triggered, 2 for severe bradycardia, and 3 for loss of signal. None of these alarms were acknowledged.

31. According to the EMR, at 5:50 a.m. on August 21, 2025, RN Land performed and

SVE and documented 10 cm cervical dilation (complete). RN Land also documented "patient states she feels a lot of pressure."

32. Between 5:52 a.m. and 6:20 a.m. on August 21, 2025, a total of 2 FHM alarms were triggered, both for loss of signal. Neither of these alarms were acknowledged.

33. According to the EMR, at 6:32 a.m. on August 21, 2025, RN Hawthorne called Dr. Teuma, who was still off site, about the Spontaneous Rupture of Membranes (SROM) which had just occurred with "thick meconium stained" fluid. No orders were requested or given and Dr. Teuma was not requested, nor did she go, to the CHI Hospital at that time.

34. According to the EMR, it is documented that at 6:38 a.m. "patient is pushing."

35. At 6:42 a.m. on August 21, 2025, an FHM alarm for severe bradycardia was triggered. This alarm was not acknowledged.

36. According to the EMR, at 6:52 a.m. on August 21, 2025, RN Thomas was at bedside and at 7:00 a.m. RN Thomas received report from RN Land and told about the 6:32 a.m. SROM with thick meconium.

37. At 7:03 a.m. a severe bradycardia alarm was triggered.

38. According to the EMR, at 7:06 a.m. on August 21, 2025, three additional RN's were at bedside for repositioning and Dr. Teuma, who was still offsite, was called regarding the severe bradycardia.

39. At 7:08 a.m., a severe bradycardia alarm was triggered.

40. According to the EMR, at 7:11 a.m. on August 21, 2025, the FHM was unplugged and Kasandra was "rushed to the OR for a STAT C-section."

41. According to the EMR, at 7:13 a.m. on August 21, 2025, RN Hawthorne called Dr. Teuma for the fetal bradycardia and Dr. Teuma states she is on the way.

42. According to the EMR, at 7:21 a.m. on August 21, 2025, RN Hawthorne called Dr. Teuma and asked for an ETA and Dr. Teuma states "less than 5 minutes".

43. According to the EMR, Dr. Teuma arrived at 7:24 a.m.

44. According to the EMR, at 7:26 a.m. on August 21, 2025 external ultrasound showed the FHT in the 80's. At that same time, according to the EMR, an incision was made and at 7:29 a.m. on August 21, 2025 KMSB was delivered.

45. KMSB's Apgars were 1, 3, 4 at 1, 5,10, respectively, and his cord ph was 6.6 with a -26 base excess.

46. For her part, Dr. Teuma diagnosed "fetal distress in 2nd stage of labor" and a placental abruption.

47. In her August 21, 2025 12:24 p.m. note, Dr. Teuma documented in part "Provider was called at 7:06 by a nurse stating the FHT was low, in the 70's. Provider arrived 12 mns later (@7:18am). Provider put on scrubs and went to OR. Emergency C-section was immediately started." The note displays a signed time of 10:43 p.m. on August 21, 2025.

48. In her operative report, dictated at 7:29 p.m. on August 21, 2025, Dr. Teuma states, in part, "Provider was called for fetal distress during second stage of labor. Provider was called at 7:06, arrived 7:17. The Patient was already in the OR, provider rushed to OR and started C-section. Surgery start time was 7:26, baby out at 7:29." "The infant's vertex was found to be impacted in the pelvis. The Infant's vertex was delivered atraumatically after disimpaction, followed by the remainder of the infant." "The uterus was full of blood and blood clots indicating a probable placental abruption. The Placenta was delivered spontaneously."

49. In a late entry to her August 21, 2025 6:45 a.m. labor progress note, Dr. Teuma documented, in part, " 6:33am: Provider received phone call from the nurse stating:

- patient was fully dilated, station 0/+1
- just SROM
- Cat 1 tracing
- VS stable

Nurse suggested allowing patient to labor down before pushing. Provider agreed." The note displays a signed time of 11:30 a.m. on August 24, 2025.

## COUNT I – NEGLIGENCE
## PLAINTIFFS V. CHI

50. Plaintiffs hereby incorporate all matters stated elsewhere in this pleading as if fully set forth herein at length.

51. CHI directly and through its agents, ostensible agents, employees, servants, physicians, and nursing managers, charge nurses, nursing staff, including Dr. Teuma, RN Land, RN Hawthorne, and RN Thomas, acted in a negligent and careless manner that breached the standard of care due and owed to Kasandra and KMSB, when providing care to Kasandra and KMSB.

52. The negligence and carelessness of the CHI, directly and through its agents, ostensible agents, employees, servants, physicians, and nursing managers, charge nurses, nursing staff, including Dr. Teuma, RN Land, RN Hawthorne and RN Thomas, include the following:

   a. Failure to adequately assess, monitor and attend to Kasandra, and her labor with KMSB;
   b. Failure to effect a prompt and safe vaginal delivery for multiparous patient;
   c. Failure to maintain continuous electronic FHM;
   d. Failure to adequately assess and respond to the electronic FHM;
   e. Failure to adequately coordinate and supervise response to the FHM;
   f. Failure to adequately and properly respond to the FHM loss of signal;

g. Failure to adequately and properly respond to fetal bradycardia and severe bradycardia;

h. Failure to adequately and properly acknowledge and respond to the FHM alarms;

i. Failure to appropriately and timely initiate interventions to advance induction and expedite vaginal delivery;

j. Failure to timely and properly act on findings pertaining to the care and treatment of Kasandra and KMSB;

k. Failure to adequately and timely assess, monitor and attend to Kasandra and KMSB and her labor including at bedside;

l. Failure to timely and adequately attend to examine and evaluate Kasandra and KMSB;

m. Failure to provide adequate intrauterine resuscitation;

n. Failure to provide adequate medical supervision of the nurses and healthcare providers;

o. Failure to timely and adequately notify and/or call physicians, including to bedside;

p. Failure to adequately communicate about the patient and status of the patient;

q. Failure to request orders;

r. Failure to give orders;

s. Failure to request the physician to come to the hospital;

t. Failure of the physician to timely go to the hospital;

u. Failure to timely appear at the hospital for a vaginal delivery;

v. Failure to timely appear at the hospital for a C-section;

w. Failure to timely call for an emergency C-section to delivery KMSB;

x. Failure to timely, adequately and properly effectuate the C-section to delivery of KMSB;

y. Failure to timely deliver KMSB;

z. Failure to timely deliver KMSB by C-section;

aa. Failure to properly evaluate, diagnose and treat Kasandra and KMSB;

bb. Failure to adequately communicate and coordinate among medical personnel including physicians, nurses and staff;

cc. Failure to consult with nurse supervisors or other staff physicians;

dd. Failure to exercise the chain of command;

ee. Failing to consistently act in the interests of Kasandra and KMSB;

ff. Failure to adhere to principles of a culture of safety;

gg. Failure to advocate for patient safety;

hh. Failure to use that degree of care and skill which is expected of a reasonably competent hospital in the same or similar circumstances;

ii. Failure to select and retain only competent nurses and healthcare providers;

jj. Failure to properly train, monitor and supervise the labor and delivery nursing and other staff members in the Labor and Delivery Unit;

kk. Failure to appropriately oversee and supervise its agents, ostensible agents, employees, and servants properly and adequately;

ll. Failure to implement, formulate, adopt, and enforce appropriate and adequate rules, policies, procedures, and protocols to ensure quality care and patient safety;

mm. Failure to implement, formulate, adopt and enforce appropriate and adequate policies and procedure regarding coordination of care and communication among medical personnel, including physicians, nurses and staff;

nn. Failure to have adequate systems, staffing, and facilities to care for a pregnant woman presenting for and or otherwise in need of labor and delivery care;

oo. Failure to have and properly utilize an adequate central monitoring system with appropriate alarms;

pp. Failure to implement, formulate, adopt, and enforce systems to prevent harm from reaching the patients;

qq. Failure to implement, formulate, adopt and enforce a culture of safety which is standard of care;

rr. Complete system failure; and

      ss. Allowing the system failure to cause harm to KMSB.

53. As a direct and proximate result of CHI's negligence and carelessness, directly and through its agents, ostensible agents, employees, servants, physicians, and nursing managers, charge nurses, nursing staff, including Dr. Teuma, RN Land, RN Hawthorne and RN Thomas, KMSB suffered severe and permanent neurological injuries including HIE.

54. As a direct and proximate result of CHI's negligence and carelessness, directly and through its agents, ostensible agents, employees, servants, physicians, and nursing managers, charge nurses, nursing staff, including Dr. Teuma, RN Land, RN Hawthorne and RN Thomas, KMSB has suffered and will continue to suffer great pain, anguish, sickness and agony.

55. As a direct and proximate result of CHI's negligence and carelessness, directly and through its agents, ostensible agents, employees, servants, physicians, and nursing managers, charge nurses, nursing staff, including Dr. Teuma, RN Land, RN Hawthorne and RN Thomas, KMSB suffered emotional injuries, mental anguish, loss of life's pleasures, loss of hedonic pleasures and the inability to work.

56. As a direct and proximate result of CHI's negligence and carelessness, directly and through its agents, ostensible agents, employees, servants, physicians, and nursing managers, charge nurses, nursing staff, including Dr. Teuma, RN Land, RN Hawthorne and RN Thomas, KMSB has undergone a total loss of earning capacity and by reason of her injuries, has sustained a total loss of all future earnings and earning capacity.

57. As a direct and proximate result of CHI's negligence and carelessness, directly and through its agents, ostensible agents, employees, servants, physicians, and nursing managers, charge nurses, nursing staff, including Dr. Teuma, RN Land, RN Hawthorne and RN Thomas, Kasandra and KMSB have incurred and will continue to incur medical and other related expenses.

## COUNT II – NEGLIGENCE
## PLAINTIFFS V. DEFENDANT DR. TEUMA

58. Plaintiffs hereby incorporate all matters stated elsewhere in this pleading as if fully set forth herein at length.

59. Defendant Dr. Teuma acted in a negligent and careless manner that breached the standard of care due and owed to Kasandra and KMSB, when providing care to Kasandra and KMSB.

60. The negligence and carelessness of Defendant Dr. Teuma include the following:

   a. Failure to adequately assess, monitor and attend to Kasandra, and her labor with KMSB;

   b. Failure to effect a prompt and safe vaginal delivery for multiparous patient;

   c. Failure to maintain continuous electronic FHM;

   d. Failure to adequately assess and respond to the electronic FHM;

   e. Failure to adequately coordinate and supervise response to the FHM;

   f. Failure to adequately and properly respond to the FHM loss of signal;

   g. Failure to adequately and properly respond to fetal bradycardia and severe bradycardia;

   h. Failure to adequately and properly acknowledge and respond to the FHM alarms;

   i. Failure to appropriately and timely initiate interventions to advance induction and expedite vaginal delivery;

   j. Failure to timely and properly act on findings pertaining to the care and treatment of Kasandra and KMSB;

   k. Failure to adequately and timely assess, monitor and attend to Kasandra and KMSB and her labor including at bedside;

   l. Failure to timely and adequately attend to examine and evaluate Kasandra and KMSB;

   m. Failure to provide adequate intrauterine resuscitation;

  n. Failure to provide adequate medical supervision of the nurses and healthcare providers;

  o. Failure to adequately communicate about the patient and status of the patient; Failure to give orders;

  p. Failure of the physician to timely go to the hospital;

  q. Failure to timely appear at the hospital for a vaginal delivery;

  r. Failure to timely appear at the hospital for a C-section;

  s. Failure to timely call for an emergency C-section to deliver KMSB;

  t. Failure to timely, adequately and properly effectuate the C-section to delivery of KMSB;

  u. Failure to timely deliver KMSB;

  v. Failure to timely deliver KMSB by C-section;

  w. Failure to properly evaluate, diagnose and treat Kasandra and KMSB;

  x. Failure to adequately communicate and coordinate among medical personnel including physicians, nurses and staff;

  y. Failing to consistently act in the interests of Kasandra and KMSB;

  z. Failure to adhere to principles of a culture of safety;

  aa. Failure to advocate for patient safety;

  bb. Failure to use that degree of care and skill which is expected of a reasonably competent hospital in the same or similar circumstances; and

  cc. Allowing the system failure to cause harm for KMSB.

61. As a direct and proximate result of Defendant Dr. Teuma's negligence and carelessness, KMSB suffered severe and permanent neurological injuries.

62. As a direct and proximate result of the Defendant Dr. Teuma's negligence and carelessness, the risk of KMSB suffering severe and permanent neurological injuries was increased.

63. As a direct and proximate result of the injuries referenced herein, KMSB has suffered and will continue to suffer great pain, anguish, sickness and agony.

64. As a direct and proximate result of these injuries, KMSB suffered emotional injuries, mental anguish, loss of life's pleasures, loss of hedonic pleasures and the inability to work.

65. As a direct and proximate result of these injuries, KMSB has undergone a total loss of earning capacity and by reason of her injuries, has sustained a total loss of all future earnings and earning capacity.

66. As a direct and proximate result of these injuries, KMSB has incurred and will continue to incur medical and other related expenses.

### COUNT III- LOSS OF CONSORTIUM
### KASANDRA JENE SURVIA BROWN VS. ALL DEFENDANTS

67. Plaintiffs hereby incorporate all matters stated elsewhere in this pleading as if fully set forth herein at length.

67. As set forth above, the Defendants acted in a negligent and careless manner that breached the standard of care due and owed to Kasandra and KMSB, when providing care to Kasandra and KMSB.

69. As a direct and proximate result of Defendants' negligence and carelessness, directly and through its agents, ostensible agents, employees, servants, physicians, and nursing managers, charge nurses, nursing staff, including Dr. Teuma, RN Land, RN Hawthorne and RN Thomas, KMSB suffered serious and permanent injuries including but not limited to, physical injury, emotional trauma, mental anguish and economic loss.

70. As a direct and proximate cause of the serious and permanent injuries of KMSB, Kasandra has suffered damages in the form of emotional distress, loss of companionship, loss of affection and society, loss of comfort and emotional support, loss of services and assistance in the household, and loss of consortium,

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, Kasandra Jene Survia Brown Individually and as Mother and Natural Guardian of KMSB, respectfully prays for judgment in their favor and against Defendants and the following relief:

A.  Plaintiff seeks an award in excess of this Court's minimum jurisdictional limits of $75,000.00 exclusive of interest in costs.

B.  Compensatory damages, including compensation for the cost of past and future medical care, loss of future earning capacity, past and future pain, emotional distress, and mental anguish caused by Defendants' negligence.

C.  Such other relief as this Court deems just and equitable.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues.

Dated: 2/20/2026

By: */s/ Tim Purdon*
Tim Purdon, Esquire (ND #05392)
Robins Kaplan LLP
1207 West Divide Avenue, Suite 200
Bismark, ND 58501
(612) 349-8767 Phone
tpurdon@robinskaplan.com

By: */s/ Jeffrey B. Killino*
Jeffrey B. Killino, Esquire
The Killino Firm, P.C.
2005 Market Street, Suite 3130
Philadelphia, Pennsylvania 19103
(878) 888-7878 Phone
jkillino@killinofirm.com

**ATTORNEYS FOR PLAINTIFF**